949 A.2d 324 (2008)
401 N.J. Super. 172
Tyrone BARNES, Plaintiff-Appellant,
v.
Lydell B. SHERRER, Administrator at Northern State Prison, Defendant-Respondent.
No. A-5520-06T1
Superior Court of New Jersey, Appellate Division.
Submitted January 9, 2008.
Decided June 24, 2008.
Tyrone Barnes, appellant, filed a pro se brief.
Anne Milgram, Attorney General, for respondent, did not file a brief.[1]
Before Judges PAYNE, SAPP-PETERSON and MESSANO.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff Tyrone Barnes, presently an inmate at New Jersey State Prison, claims that, while incarcerated at Northern State Prison, some of his property was stolen by a corrections officer after Barnes was removed from his cell as the result of a disciplinary charge. After unsuccessfully seeking an administrative remedy for the lost property, he was advised by a Department of Corrections (DOC) ombudsman to file an action in the Special Civil Part against the officer, which Barnes did. However, the action was dismissed, we presume because Barnes did not appear in court. Upon inquiry to the county's assignment judge, the judge took the position that N.J.A.C. 10A:3-9.13[2] requires *325 Barnes to pay the cost of his transportation to court in advance of his appearance, and that he had failed to do so. On appeal, Barnes claims that his cause of action is related to his confinement, and thus that the DOC must transport him to court at its cost. Barnes also claims that summary relief is warranted as the result of our unpublished, per curiam opinion in Aruanno v. Northern State Prison, No. A-4906-04T2, 2006 WL 3018003 (App.Div. October 25, 2006).
Because it is our only resource, we take the facts of this matter from the brief submitted by Barnes and from the documents that he has appended to the brief. Barnes alleges that on May 15, 2005, a disciplinary charge was entered against him. At that time, he was placed in detention, and according to Barnes, prison officer Mungro ordered housing corrections officer P. Evans to pack and inventory all of Barnes's personal property. Barnes further alleges that on May 16 or 17, 2005, Lt. Pierrer Emmanuel "decided to have Barnes's property transferred to his office." Barnes states that Emmanuel was "never a part of any investigation leading up to the May 15, 2005 infraction." Barnes further states that he filed "[a]n administrative remedy" against Emmanuel on June 6, 2005 for "his abuse of authority."
Barnes claims that on June 10, 2005, portions of his personal property were returned to him, but that a Magnavox color T.V., a Cambridge radio, a Walkman stereo, beard trimmers, and his entire file of legal diskettes were missing. He states that the property received by him conformed to an inventory sheet that was then provided to him, signed by an officer McEachio[3] as inventory officer, which omitted any reference to the missing items. Barnes alleges that he "later learned that McEachio never existed as an employee at [Northern State Prison]." He further alleges that the original inventory form, which officer Evans confirmed that he filled out, cannot be found. Barnes asserts that Emmanuel, who allegedly transferred Barnes's property to his own office, is "notorious [for] stealing scores of prisoners' property and selling it." He also stated in his claim for lost property that "Lt. Emmanuel was playing radio in office for approx. 2 weeks. All officers that work 1, 2, 3, 4 wing will confirm if shown photo."
As evidence that Barnes previously possessed the articles that he claims were stolen from him, Barnes has produced an inmate inventory sheet, dated March 31, 2005, that indicates that a Cambridge radio was taken from him, the clock and the alarm were disabled by an Officer Harmon, and the radio was returned to him on April 1, 2005  forty-five days before the incident leading to Barnes's detention. Barnes also has produced product information regarding the radio that states a price of $349.99. With respect to the beard trimmer, Barnes has produced a "Test of Appliance" form, dated either January or July 2, 2002, indicating that Barnes's "ANDIS, Beard Trimmer" worked to Barnes's satisfaction and that it was both tested and engraved. An October 11, 1997 receipt for a Sony Walkman costing $63.00 has also been included. Barnes has produced no evidence of ownership of the allegedly missing television, but claims a value of $131.89 for it.
On June 15, 2005, Barnes was transferred to Northern State's infirmary, and on June 21, 2005, he was transferred to New Jersey State Prison. Following his *326 transfer and upon receipt on August 15, 2005 of his property, Barnes filed an inmate property claim, dated August 16, 2005 and received by "C. Tulband" on August 18, 2005. An additional copy of the claim form and exhibits was forwarded to Northern State Prison by a social worker named Nievez on August 31, 2005 through inter-institutional mail.[4]
Barnes appears to have received no response from Northern State Prison. A letter to the Attorney General likewise received no response. On January 6, 2006, Barnes was advised by assistant ombudsman Lee to file a "small claim in the small claim court." A detailed complaint, dated September 25, 2006, was subsequently filed, along with a request for a court order requiring DOC transportation to court. A response to the request was not received, although court staff did contact Barnes to request that he "file an order to waive filing fees."
Barnes was notified that a non-jury trial in his matter was scheduled for February 9, 2007. By letter (allegedly, his third) dated April 26, 2007 and addressed to the assignment judge, Barnes inquired about the status of his claim. In a response dated May 7, 2007, the judge informed Barnes that his case was dismissed on January 22, 2007, prior to the scheduled trial date, and stated further:
Any person who is incarcerated who files a small claims action must follow the court rules as stated under N.J.A.C. 10A:3-9.13, which states the costs associated with transporting the inmate to court for a civil case is the responsibility of the inmate/and inmate's attorney or representative. The Civil court does not make these accommodations on matters plaintiff files for their own personal recourse. The facility social worker can provide you with information with regard to the fee. If you acquire the fee for transport, the clerk's office will accommodate the Department of Corrections.
This appeal followed.
Although our unreported opinions are not precedential, Rule 1:36-3, we discuss our opinion in Aruanno, upon which Barnes relies, because of its factual similarities to the present matter and its clear statement of guiding legal principles and relevant administrative regulations. We trust that receipt of the two opinions will generate appropriate action on the part of the DOC on this and subsequent lost property claims.
Aruanno, like Barnes, was an inmate at Northern State Prison who alleged loss of property, in Aruanno's case, upon transfer to another institution. After filing a "Resident Claim for Lost, Damaged or Destroyed Personal Property" on May 14, 2004 and receiving inadequate meaningful redress, Aruanno, like Barnes, filed an action in the Special Civil Part, which the court dismissed because jurisdiction lay in the Appellate Division, Rule 2:2-3(a)(2), and because the plaintiff had not exhausted available administrative remedies.
In Aruanno, we held that the trial court had properly found that jurisdiction of the dispute belonged in the Appellate Division. 2006 WL 3018003 at *1. We regard jurisdiction to have been similarly misplaced in the present matter, although the dismissal here appears to have been premised on Barnes's inability to fund his transportation to court, not upon a lack of jurisdiction. *327 On appeal, Barnes invites us to construe N.J.A.C. 10A:3-9.13 to require the DOC to fund transportation in his and similar cases, because his cause of action was "related to [his] confinement." In light of our determination that Barnes's claim should be resolved administratively, we decline to do so in the present context. Nonetheless, we express concern that prisoners such as Barnes are denied access to the courts in this fashion, if video conferencing or other technological means of communication could permit trial to occur at a reasonable cost and without the need for physical transport.
In the present matter, the property inventory at issue initially occurred as the result of Barnes's transfer to detention, not to another institution as in Aruanno's case. N.J.A.C. 10A:1-11.6, which appears applicable to both, provides:
Inventory of inmate personal property
(a) Each correctional facility shall use and maintain the IIS-1M Inmate Inventory Sheet. This inventory sheet shall be used to itemize all personal property in the inmate's possession upon admission, while incarcerated and upon transfer.
(b) If possible, personal property shall be inventoried in the presence of the inmate.
(c) The completed IIS-1M Inmate Inventory Sheet and any subsequent updates to this inventory sheet shall be signed by both the inventory officer and the inmate.
(d) In the event the inmate refuses to sign the IIS-1M Inmate Inventory Sheet, the inventory officer shall note the inmate's refusal on the inventory sheet.
(e) The signed IIS-1M Inmate Inventory Sheet shall be maintained on file (see N.J.A.C. 10A:1-11.10[5]) and a copy shall be given to the inmate.
It does not appear that compliance with this regulation occurred in the present matter. We recognize that it is unlikely that an inmate being placed in detention will be present for an inventory of his property. Nonetheless, we find no functional reason why the completed inventory sheet could not have been supplied to Barnes for his signature immediately upon the conclusion of the inventory. If that occurred, a better record would exist as to who conducted the initial inventory, when it took place, what the inventory disclosed, whether Barnes contemporaneously agreed with the inventory's content, and whether inventoried items were subsequently removed or lost. Instead, the record discloses an inventory that Barnes claims to be fictitious that lists no electronic devices, prepared by an unknown person at an unknown time and not contemporaneously acknowledged by Barnes as either accurate or inaccurate. Indeed, it is not possible to determine from the face of the inventory whether it was made upon Barnes's transfer to detention or his transfer to a different facility.
Moreover, as in Aruanno, at *2, the DOC did not follow its own rules in resolving Barnes's lost property claim. N.J.A.C. 10A:2-6.1(a) provides that, once an inmate properly files a claim for lost, damaged or destroyed property on Form 943-I,
(b) The Administrator or designee shall submit Form 943-I to the Director of Custody Operations or designee for investigation and preparation of a report. The investigation conducted by the Director of Custody Operations or *328 designee shall consist of, but not be limited to:
1. Obtaining statements from the inmate, witnesses and correctional facility staff; and
2. Verifying that the inmate was authorized to have and did in fact, possess the personal property named in the claim.
3. Verification of possession of lost, damaged or destroyed personal property may be made by review of applicable documentation such as the IIS-1M Inmate Inventory Sheet maintained by the correctional facility (see N.J.A.C. 10A:11-11).
[N.J.A.C. 10A:2-6.1(b).]
There is nothing in the record (there being no response of any nature from the State) to indicate that the required investigation occurred. We find this lapse to be particularly significant in the present case as the result of the prima facie evidence of possession of at least the radio, beard trimmer, and Walkman produced by Barnes. We are also concerned by the claim of theft by Lt. Emmanuel, regarding investigation of such a charge of malfeasance (whether or not it is found to be valid) to be necessary not only to satisfy the inmate claiming theft, but also to satisfy the State that its correctional institutions are being properly operated by competent and uncorrupted personnel.
Following investigation, N.J.A.C. 10A:2-6.1(c) requires that the inmate's Form 943-I and a copy of the investigative report be submitted to the Business Manager of the correctional facility for review, and paragraph (d) then requires the Business Manager to recommend to the Administrator either approval or denial of the claim "with substantiating reasons." No evidence appears in the record to confirm that these steps occurred, either.
As we stated in Aruanno, at that stage, The Department's rules mandate that "claims . . . denied by the Administrator shall not be processed any further. N.J.A.C. 10A:2-6.1(f). In all cases of denial, the inmate shall be notified of the denial in writing by the Administrator with substantiating reasons." N.J.A.C. 10A:2-6.1(f). The rules require that several factors "be considered before recommending approval or disapproval of claims" N.J.A.C. 10A:2-6.2(a). The factors include whether the investigation revealed neglect by the correctional facility, N.J.A.C. 10A:2-6.2(a)(1); whether care was exercised by facility staff to prevent the loss, damage or destruction to the property, N.J.A.C. 10A:2-6.2(a)(2); whether the inmate exercised care in preventing the property loss, N.J.A.C. 10A:2-6.2(a)(3); and whether it has been proven that the inmate did, in fact, possess the items in the claim, N.J.A.C. 10A:2-6.2(a)(4). In our view, the administrator who provides the "substantiating reasons" for denying an inmate's claim must address factors relevant to the denial. N.J.A.C. 10A:2-6.1(f).
[2006 WL 3018003 at *2.]
As in Aruanno, the record in this matter suggests that: "The procedure followed in this matter and the response received by plaintiff to his claim and grievances, failed to comply with the Department's own rules. This was improper." 2006 WL 3018003 at *2 (citing County of Hudson v. Dep't of Corr., 152 N.J. 60, 70, 703 A.2d 268 (1997)). Indeed, the lapse appears more egregious in the present case because it appears that no action whatsoever occurred, and Barnes received no response at all. While it certainly remains possible that a proper investigation and resolution *329 of the claim took place and simply has not been disclosed to us, the fact that the prison's ombudsman advised Barnes to file a court claim provides some evidence of an inability to procure proper administrative redress.
We therefore remand this matter to the DOC to permit it to comply with regulations that appear to have been ignored at the outset. In this connection, we anticipate that an investigation of Barnes's claim will include (1) a full evaluation of all evidence in Barnes's possession that substantiates his claim of possession of the allegedly lost items; (2) an investigation of the alleged transfer of the property to Lt. Emmanuel and his disposition of that property; and (3) if Barnes's prior ownership is substantiated, an investigation of the cause of the loss of the property Barnes has claimed took place. Administrative action shall be completed within ninety days of the issuance of this opinion.
Remanded to the Department of Corrections for further proceedings in light of this opinion. Jurisdiction is retained.
NOTES
[1] A letter to the court on behalf of the Attorney General, dated October 17, 2007, states: "Please be advised that this office will not be participating in this appeal because we did not appear in the matter below."
[2] That regulation provides in relevant part:

Transportation costs in a civil action
(a) The costs of transporting an inmate to court for civil action will be paid by the Department of Corrections when:
1. The cause of action is related to the inmate's confinement.
[3] It appears to us that the name may be McEachin
[4] Barnes claims that the late submission of the claim form occurred because of his transfer to the infirmary and then to New Jersey State Prison. We find these facts to constitute exceptional circumstances sufficient to excuse the untimely filing of Barnes's lost property claim. N.J.A.C. 10A:2-6.3(a).
[5] It appears that the reference should have been to N.J.A.C. 10A:1-11.11, the subject of which is records.